Abraham Botwinick, Respondent, *v.* Max J. Annenberg, Appellant.

Second Department, January 19, 1923.

Criminal conversation — action by husband — declarations by wife in presence of defendant admissible in behalf of plaintiff — Civil Practice Act, § 349, disqualifies wife as witness merely — divorced wife of plaintiff competent as witness for plaintiff to prove both marriage and offense charged — damages not excessive — plaintiff entitled to compensatory damages on proof of illicit intercourse.

In an action by a husband for criminal conversation, declarations made by the wife in the presence of the defendant, tending to prove illicit relations between the wife and the defendant, are admissible for the purpose of getting direct or implied admissions from the defendant.

The prohibition of section 349 of the Civil Practice Act that in an action for criminal conversation the plaintiff's wife is not a competent witness for the plaintiff runs merely to the disqualification of the wife as a witness.

*It seems,* that the divorced wife of the plaintiff in an action for criminal conversation is a competent witness to prove both the marriage and the offense charged.

A verdict for $4,000 compensatory damages and $1,000 exemplary damages was not excessive.

The plaintiff was entitled to compensatory damages on proof of illicit intercourse and so it was not error for the court to refuse to charge that proof of illicit intercourse did not in and of itself entitle plaintiff to substantial damages.

Appeal by the defendant, Max J. Annenberg, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 10th day of March, 1922, upon the verdict of a jury, and also from an order entered in said clerk's office on the 9th day of March, 1922, denying defendant's motion to set aside the verdict and for a new trial made upon the minutes.

The action was to recover damages for criminal conversation.

The plaintiff was married in Russia in 1901. He came to this country in 1904, and his wife followed in 1908; since that time they lived together in Brooklyn.

The plaintiff apparently suspected that illicit relations existed between his wife and defendant, whom he had known since 1917. On January 19, 1919, he complained to his wife that he was not feeling well and she suggested that he go to a Turkish bath. He left his home with the avowed intention of following her suggestion, but instead of doing so he returned to his home at ten minutes to one in the morning. He passed through his store, across the rear yard, and into the house, which was in darkness. He heard a noise in the bedroom overhead, turned on the electric light and ran upstairs. He saw a pair of shoes and other articles of men's wearing

apparel, which he appropriated and carried downstairs. Taking a rung from the balustrade of the stairs, he again ascended to the bedroom. The room contained two beds. In one of them was his wife, clad only in a kimono.

In testifying to what followed the plaintiff was permitted to repeat certain statements then made by his wife. He testified that when he came into the room he called in a loud voice: " Who is here? " and that his wife said: " Don't be excited, hold up yourself. * * * Remember what you are doing. I am in the family way." She then began to cry, bent to her knees, started to kiss his hand, and pleaded: " Don't disgrace yourself and don't disgrace me now." The plaintiff again demanded to know who was in the room. He was permitted to testify that she replied: " Mr. Annenberg; I didn't took in a bum; he is a gentlemen." The plaintiff said: " Let him came out," whereupon the defendant, without coat, shoes, collar or necktie, emerged from behind the other bed, where he had been concealed by a curtain. The defendant admitted that he was " wrong " and that he had " done a mistake." He said he would try to make good, adding that he and the plaintiff's wife loved each other, that she was pregnant, and that he would marry her when the plaintiff gave her a divorce. The wife expressed satisfaction with this proposed agreement, whereupon the plaintiff told her to dress herself and go with the defendant. Before permitting them to leave, however, he demanded a written admission from the defendant. To this the defendant objected, saying he would have to see a lawyer. The plaintiff thereupon detained the defendant, partially undressed as he was, and kept him practically a prisoner from that time — about two o'clock in the morning — until noon. In the meantime the plaintiff's brother and brother-in-law came in response to a summons, and defendant's lawyer also arrived. To the plaintiff's brother, as the plaintiff testified, the defendant said that a woman would ruin the biggest business man, adding: " It is not the first time that I am here and I got business with her now, and it is too late, it is all over." The plaintiff also testified that the defendant's lawyer, in the defendant's presence and apparently without contradiction, said to the plaintiff: " You got proof enough, give him his clothes and let him go." Of this testimony there was abundant corroboration.

The defendant's version was entirely different. He denied adulterous intercourse. His statement was that he was called into the store by the plaintiff's wife, who claimed she had something important to say to him. In the store she professed fear that the conversation might be overheard by the people in the adjoining

store, from which she and the defendant were separated by only a thin partition; so they left the store and entered the house. She then told him that although for many years a wife she was still a virgin, and she asked his advice about getting a divorce. During this conversation, which, as defendant testified, took place downstairs, he removed his hat and coat. The plaintiff, on arriving, drove him upstairs and kept him a prisoner after forcibly tearing off his collar and necktie and compelling him to remove his shoes.

*Almet F. Jenks* [*Almet F. Jenks, Jr.,* and *Harry L. Kreeger* with him on the brief], for the appellant.

*Herman S. Bachrach,* for the respondent.

KELBY, J.:

It was clearly within the province of the jury to believe the plaintiff's story on conflicting evidence. This would justify a finding that the defendant debauched the plaintiff's wife as alleged in the complaint.

It is claimed that serious error was committed on the trial in allowing the plaintiff and other witnesses to testify to alleged declarations by the wife in the presence of the defendant; and this because of the provisions of section 349 of the Civil Practice Act, which reads in part as follows: " In an action for criminal conversation, the plaintiff's wife is not a competent witness for the plaintiff, but she is a competent witness for the defendant, as to any matter in controversy." This prohibition runs to the disqualification of the witness. Concededly, the wife was not called as a witness upon the trial. It is claimed that the provisions of this section were being evaded by allowing witnesses to testify as to the wife's declarations in the presence of the defendant. These declarations, however, were adduced only for the purpose of getting direct or implied admissions from the defendant, and such testimony was admissible under the authorities. (See *Mainard* v. *Reider,* 2 Ind. App. 115.)

The plaintiff on the trial offered in evidence an interlocutory and a final decree, divorcing him from his wife. These, on objection by the defendant, were excluded. In spite of such exclusion, however, there is abundant evidence in the case to show that the plaintiff did obtain such a divorce. The defendant himself said that he was never served with a copy of the complaint, that he knew nothing about the divorce until two weeks before the present trial, when his attorney finally got a copy of the record, and the defendant also says that he read the record. In the case of *Wottrich* v. *Freeman* (71 N. Y. 601) it was held that in an action for criminal conversation the divorced wife of the plaintiff is a competent

witness to prove both the marriage and the offense charged. Under this authority, on proof of the divorce the plaintiff could have called his wife as a witness on his behalf. At the time of the decision of that case in the Court of Appeals there was an existing statutory provision preventing a wife from so testifying, similar to the one now in force.

I see no reason to interfere with the finding of the jury as to damages. They found $4,000 compensatory damages and $1,000 exemplary damages.

The appellant also claims error in the refusal of the court to charge the following request: " If the jury find from the evidence that defendant was guilty of illicit intercourse with plaintiff's wife, that in and of itself does not entitle plaintiff to substantial damages." In refusing to charge as requested, the court said: " I do not charge the opposite and say how much damage plaintiff should have, but I refuse to charge in the language that you state it." There is no error in this declaration of the law by the learned trial justice. As stated in Sedgwick on Damages [9th ed.], § 478, quoting from *Yundt* v. *Hartrunft* (41 Ill. 9, 12): " The degradation which ensues, the distress and mental anguish which necessarily follow, are the real causes of recovery." (And see cases there cited.) On proof of the defilement of the wife by the defendant the plaintiff was entitled to compensatory damages, and the amount, whether substantial or not, was largely within the discretion of the jury.

The judgment should be affirmed, with costs.

Present — RICH, KELLY, JAYCOX, MANNING and KELBY, JJ.

Judgment and order unanimously affirmed, with costs.